57 F.3d 1069
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Jeffrey N. FLETCHER, Plaintiff-Appellant,
v.
VICKERS INCORPORATED, Defendant-Appellee.
 No. 94-1511.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1995.
 
 Before: KENNEDY and NORRIS, Circuit Judges; and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Jeffrey N. Fletcher, appeals the District Court's grant of summary judgment in favor of defendant, Vickers Incorporated, in this diversity action for breach of contract. On appeal, plaintiff argues that defendant breached its contract to pay plaintiff $35,000 or employ him for one year in the event that plaintiff's job was eliminated through a corporate liquidation. For the following reasons, we affirm.
 
 I.
 
 2
 Plaintiff was employed by Vickers, a Delaware corporation, as general manager of Test Systems & Simulations, Incorporated ("TS & S"). TS & S, a corporation, was a joint venture between Vickers and Structural Dynamics Research Corporation. In the Spring of 1992, Vickers began exploring ways to extricate itself from TS & S, which had consistently lost money. On June 1, 1992, plaintiff met with Richard Liebson, Vice-President of Corporate Development at Vickers and plaintiff's immediate supervisor. Liebson informed plaintiff that Vickers had decided to either sell or liquidate TS & S. Plaintiff asked Liebson what plaintiff's role would be in this process. Plaintiff and Liebson agreed that plaintiff, as general manager, would explore two distinct options: liquidating TS & S and arranging a private investor purchase of TS & S. In the event that TS & S was liquidated, Vickers agreed to either pay plaintiff a lump sum of $35,000 or continue to employ plaintiff for one year.
 
 
 3
 After the meeting, plaintiff sent Liebson a memorandum memorializing their discussion. The memorandum analyzed the differences between a sale and a liquidation, concluding that a buyout or sale would be the best solution. The memorandum outlined the advantages of a sale: the new owner would assume lease obligations, customer support, warranty liabilities, and keep the majority of the staff. Plaintiff assumed that in exchange for assuming TS & S's liabilities and physical assets, the new owners would expect to pay only a nominal sum for the stock. The memorandum also outlined the disadvantages of a liquidation: it was unlikely that TS & S's lease liabilities could be sold for much, current contracts would require service and warranty through July 1993, software support and maintenance would require Hot-Line telephone support, few TS & S employees could be placed in Vickers, and ongoing systems and testing contracts would need to be fulfilled. On August 19, 1992, plaintiff was discharged. In March 1993, TS & S was sold to two different companies. EG & G Structural Kinematics bought TS & S's testing component. Servotest Systems Limited bought TS & S's systems component.
 
 
 4
 Both parties agree that the liquidation of TS & S was a condition precedent to defendant's performance. The issue in this case is whether TS & S in fact was liquidated. The District Court concluded that using plaintiff's own definition of liquidation, TS & S had not been liquidated. The District Court first determined that the term "liquidation" was ambiguous, and looked to the parties' definitions. Liebson testified that liquidation meant:
 
 
 5
 an auction-like sale of the property owned by the business after a complete shutdown of the business enterprise, where the seller is left with the contractual and other liabilities of the business, and, because of the complete shutdown, all employees are terminated. My understanding of the term "sale" is a transfer of all or part of a business as an on-going enterprise where the buyer(s) continue to operate the business and service the business' customers, and where the buyer(s) assume various contractual and other obligations of the business. With a sale, the business continues to exist with some or all of the same employees.
 
 
 6
 The Court noted that Liebson's definition conformed to the definition implicit in plaintiff's memorandum.
 
 
 7
 The District Court then noted that the transaction between Vickers, EG & G and Servotest conformed to both parties' definition of a sale. EG & G and Servotest assumed TS & S's leases, contracts, purchase orders, certain service and warranty obligations, and some of TS & S's employees. Additionally, none of the disadvantages of a liquidation enumerated in plaintiff's memorandum materialized. The District Court concluded that there was no genuine issue of material fact regarding whether a liquidation had occurred, and summary judgment was appropriate.
 
 II.
 
 8
 We review a grant of summary judgment de novo. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.PROC. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)).
 
 III.
 
 9
 Plaintiff first argues that there are questions of fact regarding the meaning of the term liquidation and whether a liquidation occurred. Plaintiff points to a list, captioned "Preliminary Liquidation Functions," that Liebson gave to plaintiff after their June meeting. The list included the following tasks: profile candidates and seek placements; prioritize and implement force reductions; complete, ship and bill open orders; arrange ongoing service to customers; sell/license Enterprise; sell assets; environmental wrap up; lease negotiation; and close and secure building.
 
 
 10
 Plaintiff contends that all of the tasks on the list were completed except for one. The list, however, does not contradict the definition of "liquidation" in plaintiff's memorandum or in Liebson's affidavit. Nor does plaintiff contend that the list included the actual steps of liquidation, rather than antecedent tasks. When Liebson gave plaintiff the list, it was unknown whether TS & S would be sold or liquidated. Indeed, plaintiff testified that Liebson told him to start the tasks on the list and pursue a sale of TS & S at the same time. Plaintiff also argues that Vickers executives, including Liebson, told plaintiff that he was terminated because TS & S was being liquidated. As the District Court found, however, the issue in this case is not whether Vickers executives said that TS & S would be liquidated seven months prior to the actual disposition, but whether TS & S was in fact liquidated.
 
 
 11
 Plaintiff next argues that there was evidence that TS & S was sold at "auction-like" prices, suggesting that TS & S was liquidated. Plaintiff points out that Liebson's definition of liquidation included the phrase "auction-like" sale. Additionally, plaintiff argues that the spreadsheets that accompanied his memorandum demonstrate that the sale price for TS & S was closer to the price estimated for a liquidation rather than a sale. Finally, plaintiff points to the affidavit of Shelley Hickcox, TS & S's financial controller. Hickcox stated that TS & S's assets were sold at "auction-like" prices. That TS & S was sold for a very low price, however, does not suggest that it was liquidated rather than sold. Plaintiff's own memorandum projected that if TS & S were sold, "the new ownership would expect to pay only a nominal sum for the TS & S stock." Moreover, neither Liebson's definition of "liquidation," nor plaintiff's analysis of the differences between sale and liquidation turned on the purchase price, but rather on whether the new entity took over TS & S's obligations.
 
 
 12
 Finally, plaintiff argues that there is a genuine question about whether TS & S was liquidated, even if plaintiff's memorandum is used as a benchmark. Plaintiff notes that his memorandum stated that if TS & S were sold, the new owner would retain approximately 26 of TS & S's 33 employees. In fact, plaintiff points out, only 13 of the 33 employees were retained. Additionally, Servotest and EG & G only assumed TS & S's warranty liabilities up to $5,000. To avoid summary judgment, however, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We do not believe that a reasonable jury could find that TS & S was liquidated based upon these minor discrepancies between plaintiff's projections of what a sale would involve and what actually occurred.
 
 IV.
 
 13
 For the foregoing reasons, the District Court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation